SELWYN EDDY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21612. Promulgated April 29, 1932.

*O. R. Folsom-Jones*, Esq., and *F. E. Youngman*, Esq., for the petitioner.

*F. R. Shearer*, Esq., for the respondent.

OPINION.

TRAMMELL: The parties are not in accord as to the relationship existing between Charles A. Eddy, Charles F. Eddy, the Eddy Investment Company, and the petitioner from the organization of the petitioner in February, 1914, down to 1920. The petitioner, apparently relying upon the agreement of February 4, 1899, between the members of the then existing partnership and set out in our findings of fact, takes the view that the partnership was continued on down into 1920. The respondent, relying on certain decisions of the Supreme Court of Michigan, takes the view that the partnership was dissolved by the death of John F. Eddy, which occurred about 1900; that thereafter the surviving partners were trustees for the purpose of winding up the affairs of the partnership; that the Eddy Investment Company and the petitioner never became members of the partnership and that they merely acquired equitable interests in the properties of the former partnership held by the surviving partners as trustees. In view of our disposition of the issues presented by this proceeding we do not deem it necessary to decide which, if either, of the above views is correct. Irrespective of the legal relationship existing between the parties, properties were held and business was conducted under the name of Eddy Brothers & Company. Our decision would be the same regardless of whether Eddy Brothers & Company were a partnership or some other form of organization.

The respondent has included in the petitioner's taxable income for 1920 the amount of $57,033.35 received by the petitioner in that

year in connection with the final settlement of the controversy as to the transfer of the stock of the Dominion Sugar Company, Ltd., as set out in our findings of fact. The respondent's position is that the petitioner's capital investment in its one-fourth equitable interest in this stock, together with its investment in the other properties held by Eddy Brothers & Company, was returned to it by the payments in cash and stock which it received from Charles A. Eddy and Charles F. Eddy or their representatives as surviving partners; that the amount received by the petitioner in settlement of the controversy relating to the stock was income to the petitioner for the year in which petitioner's claim was finally adjusted; and that the amount which the petitioner was to receive was not finally ascertained until 1920. The petitioner contends that the amount of $57,033.35 constituted a return of capital, but that if it was taxable income it accrued prior to 1920 and therefore is not to be included in income for 1920.

Where a taxpayer keeps its books on the accrual basis its income is to be reported in the year in which it accrues, irrespective of the fact that it is received in a subsequent year. *Mianus Motor Works, Inc.*, 5 B. T. A. 435. The parties are in agreement that the petitioner kept its books on the accrual basis. Consequently, if the amount in controversy accrued prior to 1920 it may not be included in income for that year. The evidence shows that in 1916 the petitioner's right to receive further payment on account of the stock was admitted. It also shows that some time prior to 1920 a settlement of the controversy was reached between the interested parties, wherein it was agreed that the petitioner was to receive an additional payment based on the value of the stock of the Dominion Sugar Company, Ltd., on January 1, 1915. This agreement not only definitely fixed the petitioner's right to receive an additional payment, but also fixed the basis for computing the amount or extent of such payment. The petitioner's right to receive such payment and the basis upon which it was to be made were no longer an open question. It was thenceforth entitled to receive the amount disclosed by a computation based on the agreement.

The basic idea underlying the accrual system of accounting is that the books shall immediately reflect obligations and expenses definitely incurred and income definitely earned. It is not necessary that the amount of such items be exactly ascertained in order to accrue them, if a mere calculation or computation based on ascertained factors is all that remains to be done. *H. H. Brown Co.*, 8 B. T. A. 112. In the instant case we are not informed as to when the computation of the amount received by the petitioner was made. However, that is not important since we know that the right to receive such amount became fixed and determined prior to 1920. In

our opinion the petitioner's right to receive the payment here involved accrued prior to 1920. Consequently, the amount accrued prior to that year, even though it may not have been exactly ascertained until during 1920. Since the amount accrued prior to 1920, it becomes unnecessary to determine whether it constitutes income as contended for by the respondent or was a return of capital as contended by the petitioner. In any event, it would not be taxable in 1920.

In an amended answer filed at the hearing the respondent alleges that the petitioner realized a profit on the liquidation of its interest in Eddy Brothers & Company in 1920, and seeks to have the amount of the deficiency increased by including in the petitioner's income the amount so realized. The burden with respect to the issue thus raised is upon the respondent.

In his brief the respondent contends that the amount of income realized by the petitioner on the liquidation of its interest in Eddy Brothers & Company was $101,765.85, which he computes as follows:

| | | |
|---|---:|---:|
| Fair market value of petitioner's interest at the time acquired on February 4, 1914 | | $165, 954. 83 |
| Cash or its equivalent received by the petitioner between 1914 and 1920 and representing a return of petitioner's investment in its interest | | 87, 344. 59 |
| Unreturned basis on January 1, 1920 | | 78, 610. 24 |
| Received in 1920: | | |
| Cash | $3, 000. 00 | |
| Stock of Eddy Brothers, Ltd., of a fair market value of | 177, 376. 09 | |
| | | 180, 376. 09 |
| Profit realized in 1920 | | 101, 765. 85 |

To sustain his contention the respondent relies very largely upon entries contained in the petitioner's books of account.

To determine whether the petitioner realized any profit on the liquidation of its interest in Eddy Brothers & Company it is necessary for us to know the cost to the petitioner of such interest at the time of acquisition on February 4, 1914, as well as the amount of money and the fair market value at the time of receipt of property received by the petitioner in liquidation. The record shows that upon organization on February 4, 1914, the petitioner took over all the assets and assumed all the liabilities of the estate of Selwyn Eddy and issued therefor its authorized capital stock of $100,000 par value. With the exception of the estate's interest in Eddy Brothers & Company, which the evidence indicates was its principal asset, and its liability of $5,330.15 to that company, we are not informed as to the assets taken over by the petitioner or their value,

nor are we informed as to the liabilities or the amount thereof. No evidence was offered as to the market value of the stock issued in exchange for the net assets taken over, and, even if we knew such value, we are still uninformed as to the amount of stock issued for the interest in Eddy Brothers & Company. Assuming that the stock had a value equal to the fair market value of the net assets received therefor and that the cost to the petitioners of its interest in the association was the fair market value thereof at the time of its receipt, we will examine the respondent's computation of profit in the light of the evidence. The evidence shows that when it acquired its interest in Eddy Brothers & Company on February 4, 1914, the petitioner set such interest up on its books at a value of $100,000. The secretary-treasurer of the petitioner, under whose supervision the books were kept, testified that in placing the interest on the books at that amount no thought was given to values, but there was just "the question of putting these things on the books, any item that came into my head. That is the way the books were started; it was not done as a matter of valuing those upon the books."

The evidence further shows that under date of December 31, 1918, the petitioner made an adjusting entry on its books with respect to the entry by which it had placed on its books its interest in Eddy Brothers & Company at $100,000 on February 4, 1914. In this adjusting entry the petitioner wrote up by $65,954.83 the value at which its interest had been entered on the books on February 4, 1914. The explanation as given in the entry for this write-up in value was that it was to set up the fair value of petitioner's interest at the date acquired. The amount of $65,954.83 was explained as follows:

| | |
|---|---:|
| Net worth—12–31–11 | $663,819.33 |
| ¼ | 165,954.83 |
| As set up | 100,000.00 |
| Difference | 65,954.83 |

This computation indicates that the net worth of Eddy Brothers & Company at December 31, 1911, was used as a basis for arriving at the amount of $65,954.83, even though the petitioner had not then acquired its interest in that company and did not acquire it until more than two years afterwards.

With respect to the adjusting entry, the petitioner's secretary-treasurer testified that the amount of $65,954.83 was not arrived at as the result of any appraisal, nor was it the result of any investigation on his part, but was based on a statement sent to him. Apparently this statement was sent by those in active charge of the business of Eddy Brothers & Company.

Relying on the foregoing book entries and on the statement contained in the petitioner's capital-stock-tax return for the fiscal year ended June 30, 1916, that the fair value of the total capital stock for that fiscal year was $162,500, the respondent contends that the cost to the petitioner of its interest in Eddy Brothers & Company at the time of acquisition on February 4, 1914, was not in excess of $165,954.83.

From what has been said above, we think it is clear that the amount of $100,000 at which the interest was entered on the petitioner's books on February 4, 1914, can not be accepted as representing its fair market value at the time acquired. Nor is the fact that this amount was increased on the books by $65,954.83 at December 31, 1918, of any weight when it is considered that the entry was not based on any appraisal nor upon any investigation made by the petitioner, but apparently upon the financial condition of Eddy Brothers & Company at a date more than two years prior to the date the petitioner acquired its interest therein. There is nothing in the record to indicate that the financial condition of Eddy Brothers & Company was the same on both dates. The statement contained in the petitioner's capital-stock-tax return for the fiscal year ended June 30, 1916, as to the fair value of its stock during that fiscal year does not throw any more light on what the fair market value of the interest was on February 4, 1914, than the other evidence relied on by the respondent. We recognize the force of the respondent's argument that book entries in and of themselves might be considered to be admissions against interest and, as such, to be some evidence, but the testimony relating to these entries is in our opinion sufficient to deprive that evidence of any evidentiary force. The entries must be considered in the light of the explanations with respect thereto. Considering all the evidence on the point, we are unable to determine the fair market value of the petitioner's interest in Eddy Brothers & Company at the time of acquisition. Being unable to determine this essential fact, we can not determine that the petitioner realized a profit of $101,765.85 or any other amount on the final liquidation of its interest in the association in 1920. The respondent's contention that the petitioner realized a profit in 1920 on the final liquidation of its interest must therefore be denied.

The petitioner amended its petition to allege that it sustained a loss on the liquidation of its interest in Eddy Brothers & Company. Apparently the issue raised by this allegation has been abandoned by the petitioner, since it offered no evidence in support thereof and makes no contention with respect thereto in its brief. But whatever may be the petitioner's position with respect to the issue, it must be decided adversely to the petitioner for the reason that we are unable

to determine what the fair market value of the petitioner's interest was at the time of acquisition.

The remaining issue relates to the running of the period of limitations against assessment and collection of the increase in the deficiency as proposed by the respondent at the hearing. Since the proposed increase in the deficiency was based upon the respondent's contention that the petitioner realized a profit in 1920 on the final liquidation of its interest in Eddy Brothers & Company, and as this contention has been decided adversely to the respondent, the issue relating to limitations becomes a moot question which we are not called upon to decide.

*Judgment will be entered under Rule 50.*